70 So.2d 508 (1954)
FLORIDA TEL. CORP.
v.
CARTER et al.
Supreme Court of Florida. En Banc.
February 16, 1954.
C. Farris Bryant, Green & Bryant, Ocala, and Ausley, Collins & Ausley, Tallahassee, and William C. Harris, St. Petersburg, and J. Thomas Gurney, Orlando, for petitioner.
Lewis W. Petteway, Tallahassee, for Florida Railroad and Public Utilities Commission.
Wallace E. Sturgis, Ocala, for Marion County.
J.B. Rodgers, Jr., Orlando, for Town of Montverde, Town of Oakland and Town of Winter Garden.
O.P. Johnson, St. Cloud, for Town of St. Cloud.
James Smith, Jr., Ocala, for City of Ocala.
Ellis F. Davis, Kissimmee, for City of Kissimmee.
George Dayton, Dade City, for Town of Dade City.
MATHEWS, Justice.
In this case the petitioner filed with the respondents an application for an increase in rates and charges for service. It also requested authority to put into effect group rates for Common Battery and Dial Exchanges when certain exchanges were converted. In due course many of the municipalities and others within the territory filed complaints about service. After the taking of voluminous testimony finding that the petitioner was entitled to an increase in its rates, the Commission then found that the service was inefficient and that the increased rates should not be put into effect because of a penalty reduction inflicted by respondent on the basis of the quality of the service being rendered. The Commission made an order embodying the findings, which reads in part as follows:
"(1) A rate base of $5,479,415 represents the reasonable value of applicant's property used and useful in rendering telephone service and upon which it is entitled to earn a fair return.
"(2) A return of seven percent (7%), plus an additional return of .13% to take care of the depressing effect of the current high cost of construction *509 on the earning rate, making a total rate of return of 7.13% on the rate base herein found to be reasonable is fair, reasonable and compensatory and should be allowed if applicant's quality of service warranted rates and charges which would produce such a return.
"(3) In order to produce a return of 7.13% as aforesaid, applicant's general exchange revenue should be increased by the gross amount of $160,015 or 18.359 percent.
"(4) The quality of the service presently being rendered by applicant throughout its system will not justify rates and charges which will produce the return which we have found to be fair and reasonable. A penalty reduction of approximately twenty-five per cent in applicant's general exchange rates and charges would be fair and reasonable in view of the inadequate and inefficient service presently being rendered by applicant.
"(5) On the basis of applicant's operating statistics, it is entitled to an increase of 18.359 percent in its general exchange revenue. However, on the basis of the poor service being rendered, applicant should suffer a penalty reduction of approximately twenty-five percent in its general exchange revenue. The granting of the one and the imposition of the other simultaneously would give the utility earnings slightly less than it now receives under the present rates. The application, therefore, should be denied without prejudice to applicant's right to renew the same when it has brought its service up to the standard required by the Commission and to which the public is entitled and upon which fair and reasonable rates are predicated.
"XI. Order
"Now, Therefore, in consideration thereof, it is ordered, adjudged, and decreed by the Florida Railroad and Public Utilities Commission as follows:
"(1) The findings of law and fact as hereinbefore set forth, together with the discussion of the various elements and factors involved as contained in the body of this Order, be and the same are hereby approved in every respect.
"(2) The application of Florida Telephone Corporation for an increase in its general exchange rates and charges be and the same is hereby denied without prejudice, however, to the right of said utility to renew said application when it has improved its service to the standard required by this Commission and to which the public is entitled."
It, therefore, appears from the record that the Commission found that an increase in the rate of return was reasonable and proper, but, on the basis of the testimony, denied any increase on the ground that the service of the petitioner was inadequate.
The question of the reasonableness of the rate or charge for service is not presented in this proceeding. The petitioner claims error because in this proceeding the respondent attempted to offset any increase in rates by imposing and enforcing a penalty based upon the finding by the respondent of inadequate service.
This proceeding began by the filing of the petition for rate increase with the respondent. The question of inadequate service and the infliction of punishment by reason thereof was raised by intervenors or by the respondents.
The primary question with which we are now concerned is whether or not the Commission, in the same proceeding in which it found the increase in rates to be just under applicable provisions of the Florida Statutes, may deny such increase by imposing a penalty for inadequate services: To state the question in another way, may a penalty for inadequate service be lawfully imposed, inflicted and enforced *510 in this rate-making proceedings when the Statutes provide other methods for imposing, inflicting and enforcing penalties for inadequate service?
This question may be answered by a consideration of the Florida Statutes and F.S.A.; namely, Sections 364.03, 364.14, 364.15, 364.21 and Chapter 28013, Laws of Florida 1953, F.S.A. § 364.33 et seq.
F.S. § 364.03, F.S.A., concerns returns, tolls, contracts and charges, and vests in the Commission authority to fix the same so that they shall be fair, just, reasonable and sufficient. We find no authority vested in the Commission to make any orders in a rate-making proceeding with reference to inadequate service.
The power and authority of the Commission with reference to repairs, improvements, equipment and service appears to be governed by F.S. §§ 364.14, 364.15, 364.21, F.S.A., and Chapter 28013, Laws of Florida 1953.
Under our Statutes the rate-making power should be exercised in one proceeding and the question of the adequacy or inadequacy of equipment, repairs, improvements and service should be disposed of in another proceeding.
While the Legislature may have the power to change the law and provide for all such matters to be disposed of in one proceeding, it is beyond the power of the Commission to change the law. The Florida Railroad and Public Utilities Commission is a creature of the statute and has only such powers as have been granted to it by the Legislature. See Atlantic Coast Line R. Co. v. Mack, Fla. 57 So.2d 447.
The increase in rates affected the entire system. The complaint with reference to poor or inadequate service covered only about 15 percent of the entire system. The imposition of penalties is covered by sections of the statute different from those authorizing the fixing of rates and are based upon different theories. Elyria Tel. Co. v. Public Utilities Commission, 158 Ohio St. 441, 110 N.E.2d 59.
The respondent-Commission had no authority to deny an increase in rates which it found to be just, by the means of inflicting a penalty because of poor or inadequate service, and exceeded its jurisdiction when it inflicted such penalty in a rate-making proceeding. If the service is poor or inadequate, the Commission may of its own motion, or upon the complaint of others, take appropriate action as provided by law.
The petition for writ of certiorari is granted and the order, dated September 1, 1953, which is number 1926, be and the same is hereby quashed, with directions that the respondent-Commission enter a proper order in accordance with this opinion.
ROBERTS, C.J., and TERRELL, THOMAS, SEBRING, HOBSON and DREW, JJ., concur.