283 So.2d 337 (1973)
Reubin O'D ASKEW, Governor of the State of Florida, Petitioner,
v.
William H. BEVIS et al., Respondents.
No. 43327.
Supreme Court of Florida.
September 28, 1973.
Arthur J. England, Jr. and Rod Tennyson, Tallahassee, for petitioner.
Prentice P. Pruitt, Tallahassee, for respondents.
J. Thomas Gurney and J. Thomas Gurney, Jr. of Gurney, Gurney & Handley, Orlando, and Edwin L. Mason of Mason & Erwin, Tallahassee, for Florida Telephone Corp.
Hugh C. Macfarlane of Macfarlane, Ferguson, Allison & Kelly, Tampa, as amicus curiae.
McCAIN, Justice.
By petition for writ of certiorari, we have for review Order No. 5618 of the Florida Public Service Commission granting, with certain restrictions, a rate increase to Florida Telephone Corporation. We have jurisdiction pursuant to Fla. Const., Article V, § 3(b)(3) (1973), F.S.A.
On June 29, 1971, the Public Service Commission commenced an investigation into the quality of telephone service being provided by Florida Telephone Corporation. Thereafter, after public hearings were held and the service investigation concluded, the Commission entered Order No. 5314 in which it determined that the services rendered, and the equipment and facilities supplied by Florida Telephone to the public were inadequate. Inter alia, in an exhaustive analysis of the company's operations, the Commission cited numerous customer complaints, the high number of held regrade applications over thirty days old, long installation intervals and poor repair service. However, the Commission also found that the company, albeit somewhat belatedly, had initiated a variety of *338 construction programs and other projects to correct its poor service record. The Commission cited the company for failing to provide adequate service and ordered the filing of quarterly reports with the Commission on the subject of service improvements.
In May, 1972, the Commission conducted hearings and received evidence on the instant application of Florida Telephone Corporation for a rate increase. (The Company's last previous rate increase was in 1956.) In Order No. 5618, which is the subject of this petition, the Commission concluded that a rate increase from an annual return of 6.18% to approximately 8.50% was vital to permit the company to render adequate service in its operating area in the future. The Commission observed:
"With revenues limited by rates and charges fixed sixteen years ago, during a greatly deflated economy as compared with the present, earnings have become so depressed as to jeopardize the company's ability to furnish the kind of service to which the public is entitled."
Nevertheless, the Commission recognized the poor quality of service rendered by the company and the dilemma of granting a rate increase under such conditions. The Commission offered the following solution:
"In view of the foregoing, it is, in our judgment, imperative that the rate relief granted herein be put under bond, such being conditioned to provide that refunds be made to the customers of the company in such amounts as may be determined by the Commission, unless the company shall have improved the quantity and quality of its telephone service in its service area to the extent that we find that the customers are receiving reasonably satisfactory service in relation to the price they pay therefor. We further find that a two-year period from the date of this order will be a reasonable time to allow the company for the full achievement of this goal." (Emphasis supplied.)
On petition for writ of certiorari here, petitioner urges that the Commission was without lawful authority to grant Florida Telephone a rate increase in the circumstances described. Petitioner contends that Fla. Stat. §§ 364.14(2)[1] and 364.15[2], F.S.A., provide the remedy for inadequate service, and that these sections do not include authority to grant a rate increase to finance service improvement programs. Additionally, petitioner argues that Fla. Stat. § 366.041,[3] F.S.A. which authorizes the commission *339 to consider rates and services in the same administrative proceeding, only permits the Commission to deny rate relief as a result of inadequate service. The statute, it is urged, provides no authority to award a rate increase when service is found inadequate.
We are compelled to disagree with petitioner. Initially, we note the paucity of Florida precedent confronting the issues raised sub judice. Fla. Stat. § 366.041, F.S.A., which in our judgment is controlling in this cause, has been the subject of only one decision by this Court since its enactment in 1967. That case, United Telephone Company of Florida v. Mayo, 215 So.2d 609 (Fla. 1968), is not definitive. There, the Public Service Commission refused to approve a rate increase sought by United Telephone until improvements planned by the company were accomplished. In affirming the Commission order we said:
"Squarely in the path of those who would oppose the ruling by the Commission is Fla. Stat. § 366.041 (1967), F.S.A., Ch. 67-326, Laws of Florida, which plainly authorizes what was done in this case... ."
Nothing in the United Telephone decision indicates a construction of the statute requiring withholding of a rate increase; rather, the opinion characterizes the statute as "authorizing" denial of a rate increase. To authorize is to permit  not to require.
Prior to the enactment of Fla. Stat. § 366.041, F.S.A., the leading case relative to service complaints in rate-making hearings was Florida Telephone Corp. v. Carter, 70 So.2d 508 (Fla. 1954). Observing that the Railroad and Public Utilities Commission (the predecessor to the Public Service Commission), had only such powers as were vested therein by the Legislature, we held that the Commission was without power to deny an otherwise justified rate increase as a penalty for poor or inadequate service. We commented on the Carter decision in United Telephone, supra:
"But, says the petitioners, the law on the subject was settled by our decision in Florida Telephone Corporation v. Carter, 70 So.2d 508 (Fla. 1954), when it was held that the Commission could not authorize an increase in rates and at the same time assess a penalty for inadequate service. It is obvious, however, that the Act which we think now governs was enacted subsequent to that pronouncement by the Court and, for ought *340 we know, was intended to overcome the decision."
It appears, as we surmised in United Telephone, that Fla. Stat. § 366.041, F.S.A., in part represents a legislative response to our ruling in Carter. In larger measure, however, and viewed in the context of the entire grant of legislative authority to the Public Service Commission, it is evident that Fla. Stat. § 366.041, F.S.A., was enacted to provide the Commission with greater flexibility in the matter of rate-making. The statute makes this plain, stating:
"... the Florida Public Service Commission is authorized to give consideration, among other things, to the efficiency, sufficiency, and adequacy of the facilities provided and the services rendered... ."
......
"... In its consideration thereof, the commission shall have authority, and it shall be the commission's duty, to hear service complaints, if any, that may be presented by subscribers and the public during any proceedings involving such rates, charges, fares, tolls, or rentals; ..."
But the statute also admonishes the Commission:
"... provided that no public utility shall be denied a reasonable rate of return upon its rate base in any order entered pursuant to such proceedings."
We cannot conclude from this language, or from the statute as a whole, that the Legislature intended, by the enactment of Fla. Stat. § 366.041, F.S.A., to preclude a rate increase where service is demonstrated to be poor. On the contrary, in our view the statute mandates the Commission to grant rate increases to insure a reasonable rate of return, but additionally provides the Commission with a means of insuring that all such increases will achieve the desirable goal of more efficient service and adequate facilities. We think the Commission performed its duties in both these respects fully and responsibly in this case. We are impressed with the Commission's evaluation of the goal sought to be attained by the Legislature pursuant to the subject statute, to-wit:
"In fixing public utility rates, this Commission has a duty to consider the quality of service being rendered by the utility in question. At the same time, it has a responsibility to give a public utility an opportunity to meet its service obligations through necessary plant additions. This requires constantly increasing capital expenditures which cannot be financed if the return is unreasonably low. Thus, in cases of this kind, the Commission is faced with the difficult problem of withholding such rate relief as may be justified of service being rendered and granting sufficient relief to enable the utility to continue its service improvement program. The grant of too much relief would, of course, be unfair to the public. At the same time, the granting of insufficient relief would not only penalize a utility that is making every effort to improve its service, but would prolong the poor service through the company's inability to finance further improvement. Our power to withhold rate relief in appropriate instances, where the quality of service justifies such action, is a powerful tool that is bringing about a steady and substantial improvement in public utility services, as is evident in this particular case. The purpose of the law is to achieve good service and its reasonable use will accomplish that purpose. At the same time, we must be careful that we do not jeopardize the ability of a public utility to accomplish the purpose of the law. We feel that we have performed this public duty in a responsible manner and that this action will ultimately benefit both the company and the consumer."
Accordingly, we reject the interpretation of the statute urged by petitioner and accept that proposed by the Commission as conforming most closely to what *341 we conceive to have been the intention of the Legislature in enacting Fla. Stat. § 366.041, F.S.A. Our careful consideration and analysis of the petition, the record and briefs of counsel sustain the view that the findings of the Commission are supported by competent substantial evidence, and that, in entering its order, respondent Commission met the essential requirements of law.
The petition for writ of certiorari is denied.
CARLTON, C.J., and ROBERTS and DEKLE, JJ., concur.
ERVIN, J., dissents with opinion.
ERVIN, Justice (dissenting):
It appears to me that the majority for all practical purposes has reverted to the rationale of Florida Telephone Corp. v. Carter (Fla. 1954), 70 So.2d 508, in the instant decision and receded from United Telephone Company of Florida v. Mayo (Fla. 1968), 215 So.2d 609, contrary to the intent and purpose of F.S., Section 366.041, F.S.A.
In the Mayo case, F.S., Section 366.041, F.S.A. was obviously held by us to "withhold approval of a rate increase until improvements planned by the company were accomplished."
The action of the Commission in the circumstances here in granting Florida Telephone Corporation a rate increase and pretending to put it under "bond" with an ambiguous, inconclusive obligation or condition
"to provide that refunds be made to the customers of the company as may be determined by the Commission unless the company shall have improved the quality of its telephone service ... to the extent that we [the Commission] find that the customers are receiving reasonably satisfactorily service in relation to the price they pay therefor" (emphasis supplied)
in my opinion is absurd and meaningless. It is obviously an empty gesture to molify the affected public.
We have here a clear departure by the Commission from the statute as construed by this Court in a fairly recent case, and then to compound the matter we have an ambiguous "bond" that on its face is a glossing over pretense wholly ineffective to compel the improvement of the quality and quantity of the telephone service. The condition of the "bond" trails off into nebulous uncertainty with no definite monetary compulsiveness, leaving dangling the amounts to be forfeited to the unfettered discretion of the Commission if the customers are found in the future not to be receiving the "reasonably satisfactory service" (emphasis supplied) they are supposed to be paying for. Telephone service should be satisfactory, not just "reasonably" so. Such loose language leaves a wide loophole or escape avenue for exercise of tender solicitude by the Commission for the telephone company.
From the record it appears that on February 2, 1972, after public hearings and a service investigation the Commission entered its order in which it determined that the services rendered by Florida Telephone Corporation were inadequate to the telephone-using public. The order directed the telephone company to institute quality telephone service by the end of 1972. Commencing in May, 1972 the Commission received evidence of the request of the telephone company for a rate increase. Both subjects, service investigation and the rate request, were consolidated into one docket.
Instead of requiring the correction of the inadequate telephone service prior to authorizing a rate increase, the Commission in violation of the statute entered its rate increase order here under review. Thus, notwithstanding the inferior quality of telephone service provided by the company, a majority of the Commission put into effect on December 28, 1972 the rate increase without regard to adequacy of service. This action of the Commission *342 was clearly arbitrary and unauthorized. As indicated, the language of the "bond" constitutes an inept, unenforceable pretense lacking meaningful compulsive force. There is no statutory authority for such a "bond." F.S., Section 366.041, F.S.A. expressly prohibits any rate increase from being effective until after service improvements have been made.
I subscribe to the views of the dissenting Commissioner Mayo, who said:
"... I cannot believe that it is right to tell the ratepayers of this company that they must pay in advance with the hope that someday the company will give the type of service to which they are entitled. Even though the majority opinion of this Commission is in effect saying to the ratepayer you are going to be protected because we are going to make the company provide a bond which will afford them the ability to refund this rate increase to its subscribers in the event they do not improve their service to acceptable standards; this does not change the fact that this Commission's majority action would in effect be telling the ratepayers to pay in advance before you get good service. I cannot agree that this is the right way to treat the subscribers of this company. I think that it is incumbent upon the management of the Florida Telephone Corporation to improve its operations to the point of being able to provide adequate service to the subscribers before asking for a rate increase."
Aside from the question of improving telephone service as a condition precedent to a rate increase, I have carefully studied this record and am far from convinced that the evidence supports a rate increase for the company in light of the inadequate service it renders. Moreover, there is a reasonable showing in the evidence the company has the present financial potential to bring its telephone service up to quality standards without the necessity of a rate increase. The income, profits, and earnings of the company apparently have suffered no dimunition, despite the fact it is reputed to have about the worst record for inadequate service extending over a long period of years of any telephone company operating in the state. Certainly the company continues to show it is a profit-making concern, paying good dividends and salaries and is in no danger of bankruptcy.
Any rate increase should be deferred until the company brings its service in compliance with quality standards prescribed by the Commission. I am puzzled as to why we should depart from the Mayo case.
NOTES
[1] "(2) Whenever the commissioners shall find, after such hearing that the rules, regulations or practices of any telegraph company or telephone company are unjust or unreasonable, or that the equipment facilities or service of any telegraph company or telephone company are inadequate, inefficient, improper or insufficient the commissioners shall determine the just, reasonable, proper, adequate and efficient rules, regulations, practices, equipment, facilities and service to be thereafter installed, observed and used and fix the same by order or rule as hereinafter provided."
[2] "364.15 Compelling repairs or improvements; order.  Whenever the commissioners shall find after a hearing had on their own motion or upon complaint, that repairs or improvements to, or changes in, any telegraph line or telephone line ought reasonably to be made, or that any additions or extensions should reasonably be made thereto, in order to promote the security or convenience of the public or employees, or in order to secure adequate service or facilities for telegraphic or telephonic communications, the commissioners shall make and serve an order directing that such repairs, improvements, changes, additions or extensions be made in the manner to be specified therein."
[3] "(1) In fixing the just, reasonable, and compensatory rates, charges, fares, tolls, or rentals to be observed and charged for service within the state by any and all public utilities under its jurisdiction, the Florida Public Service Commission is authorized to give consideration, among other things, to the efficiency, sufficiency, and adequacy of the facilities provided and the services rendered, the value of such service to the public, and the ability of the utility to improve such service and facilities; provided that no public utility shall be denied a reasonable rate of return upon its rate base in any order entered pursuant to such proceedings. In its consideration thereof, the commission shall have authority, and it shall be the commission's duty, to hear service complaints, if any, that may be presented by subscribers and the public during any proceedings involving such rates, charges, fares, tolls, or rentals; provided however, that no service complaints shall be taken up or considered by the commission at any proceedings involving rates, charges, fares, tolls or rentals; unless the utility shall have been given at least thirty days written notice thereof and any proceeding may be extended prior to final determination for such period; and provided further that no order hereunder shall be made effective until a reasonable time shall be given the utility involved to correct the cause of service complaints considering the factor of growth in the community and availability of necessary equipment.

"(2) The power and authority herein conferred upon the Florida Public Service Commission shall not cancel or amend any existing punitive powers of the commission but shall be supplementary thereto and shall be construed liberally to further the legislative intent that adequate service shall be rendered by public utilities in the state in consideration for the rates, charges, fares, tolls, and rentals fixed by said commission and observed by said utilities under its jurisdiction.
"(3) The term `public utility' as used herein means all persons or corporations which the Public Service Commission has the authority, power, and duty to regulate for the purpose of fixing rates and charges for services rendered and requiring the rendition of adequate service.
"(4) Any order entered pursuant to the provisions of this section shall contain specific finding of law and fact upon which it is based and shall be fully reviewable by the supreme court as provided by law."