#### FLORIDA WATER AND UTILITIES, Inc. v.
#### METROPOLITAN DADE COUNTY ENVIRMONENTAL
#### QUALITY CONTROL BOARD
No. 76-11311

#### FLORIDA WATER AND UTILITIES, Inc. v.
#### METROPOLITAN DADE COUNTY WATER AND SEWER BOARD
No. 76-18500

#### FLORIDA WATER AND UTILITIES, Inc. v.
#### METROPOLITAN DADE COUNTY WATER AND SEWER BOARD
No. 76-18501

Circuit Court, Dade County.

July 5, 1977.

B. Kenneth Gatlin and John W. Costigan of Madigan, Parker, Gatlin, Truett, Swedmark & Skelding, Tallahassee and Robert L. Floyd of Frates, Floyd, Pearson, Stewart, Richman & Greer, Miami, for the petitioner.

Stuart L. Simon, County Attorney, and Clifford A. Schulman and Richard M. Dunn, Assistant County Attorneys, for the respondents.

FRANCIS J. CHRISTIE, Circuit Judge.

These matters came on to be heard by the court on the consolidated petitions for writ of certiorari of Florida Water and Utilities, Inc. (hereafter Florida Water) to the actions and orders of the Dade County Environmental Quality Control Board (hereafter EQCB) and the Dade County Water and Sewer Board (hereafter WSB). The court has read and reviewed the entire record and transcripts in these matters and has had the benefit of excellent and extensive briefs and argument of counsel. Based upon the record in these cases, the court believes that the petitions herein sought should be denied and the matters dismissed.

The record in these causes reveals that Florida Water is a Florida corporation engaged in the water and sewer utility business in Dade County. As such, it is subject to regulation by respondent Dade County, its Environmental Quality Control Board and its Water and Sewer Board. Florida Water sought an increase in its water and sewer rates and, accordingly, was subject to the following provisions of the Dade County Code —

Sec. 24-28. Statements of approved water or sewer service.

(a) Application. Any public utility holding a valid certificate pursuant to sections 32-33 and 32-49 of the Code that desires to apply for a change of rate or to change any rule or regulation as provided by section 32-64 may file with the board [EQCB] a request for a statement of approved water quality or approved sewage service.

(b) The DERM [Director, Environmental Resources Management] shall within four days from the date of such request set a hearing date for consideration of such request.

(c) In determining whether or not a public utility is entitled to a statement of approved water quality or approved sewer service the board shall consider the water quality requirements of Chapter 24 and other evidence including public comments regarding the overall quality of service. If the board finds that the utility has provided reasonable and satisfactory water quality and sewage service to the public it shall issue its statement of approved water quality or approved sewage service. Such a statement shall also indicate "excellent," "good," or "fair" quality of service depending on which, in the opinion of the board, is most appropriate. The board may not issue its approval of the water provided by a water utility if it does not meet the minimum requirements of Chapter 24.

Sec. 24-29. Emergency water rate requests.

Notwithstanding the requirements of section 24-28 the board may grant a qualified statement of approval of water service which shall be sufficient to permit the utility to apply to the water and sewer board for an emergency rate increase solely for the purpose of permitting immediate repairs and improvements necessary to bring water service and quality to minimum standards. Said qualified approval will authorize the filing of an application for a change in rates as required by section 32-64 of the Code, but qualified approvals received pursuant to this section will only support a temporary rate increase for a period not to exceed nine months. Statements of qualified approval may be granted by the board only when the board finds that:

(1) Water service is below minimum acceptable standards either as to the quality of water or the quality of service.

(2) That an emergency exists as to the quality of water or water service available to the public.

(3) That a temporary rate increase may be required to remedy the immediate problem of inadequate quality or service.

(4) That no other reasonable adequate means exists for improving the quality of service or the quality of water.

Sec. 32-64. Changes in rates.

(a) Application. Any public utility holding a valid certificate, and not in violation of any of the provisions of this chapter, desiring to change any rate, or change any rule or regulation relating thereto, shall file with the board a written application showing the change or changes proposed and shall file with such application a written explanation of the reasons for and the reasonableness of the proposed change or changes and a verified financial statement, together with such other information as may be prescribed by rules or regulations adopted by the board. *Notwithstanding any other provision of Chapter 32 of the Code of Metropolitan Dade County, no application to change any rate or to change any rule or regulation relating thereto may be filed with the board unless and until such application includes a statement of the environmental quality control board of approved water service or approved sewage service, as appropriate to such application. No change in rates may be considered or approved without said statement of approved service or qualified statement as authorized pursuant to section 24-29 of the Code. Said statement shall be valid and in full force and effect for one hundred and eighty (180)1 days from the date of its issue.* (Italics added.)

Sec. 32-65. Board shall fix just and reasonable rates.

\*  \*  \*  \*  \*

(b) Public hearing on rates. The board, after due notice, may hold a public hearing, on its own motion or upon complaint, for the purpose of considering, investigating, changing or fixing the rates and charges of any public utilities. If as a result of any such hearing and investigation, the board finds that the rates, charges, classifications or practices of any such public utility are unjust, unreasonable, unjustly discriminatory, or unduly preferential, or that the rates and charges are insufficient to yield reasonable compensation for the service rendered, the board shall determine and fix just and reasonable rates, charges, classifications and practices to be thereafter observed and conformed to by said public utility. *A valid statement of approved water and sewer service filed by said public utility shall be conclusive proof of the quality of service furnished to the public by said public utility. The board shall consider the quality of service as certified by the environmental quality control board as a factor in setting water or*

1. Since amended to call for a 270 day life span of the certificates.

*sewer rates. However, additional evidence concerning the quality of water or sewer service shall not be considered by the board at said public hearing.* (Italics added.)

On January 12, 1976, pursuant to Section 24-29 of the code, Florida Water applied to the EQCB for a Qualified Statement of Approved Water Service so that it would be permitted to apply to the WSB for a rate increase. A full and complete evidentiary hearing was held before the EQCB on an expedited basis on February 12, 1976, at which time the board denied Florida Water's requested relief by Order No. 76-15, issued on March 11, 1976. Florida Water filed its first petition for writ of certiorari from this EQCB order (Case No. 76-11311).

On April 2, 1976, despite failure to have acquired a statement of approved water and sewer service or a qualified statement, Florida Water filed two petitions before the WSB. The first was entitled "Petition . . . For Just and Reasonable Rates as Provided by Section 32-65, Dade County Code." The second petition was entitled "Petition for Recovery of Increased Cost of Water Due to New Chemical Treatment Programs Ordered by the Circuit Court in Dade County, Florida." Within its petitions, Florida Water admitted it was not in possession of the required statements as to quality of service by the EQCB, pursuant to Section 24-28 or 24-29 of the Dade County Code. Accordingly, and after a hearing on the matter, the WSB dismissed both petitions (WSB Order Nos. 76-59 and 76-60) based on lack of jurisdiction. Two petitions for writ of certiorari were filed by Florida Water directed to these orders (Case Nos. 76-18501 and 76-18500, respectively). Various motions to dismiss and strike were filed by the respondents and denied by the court. Upon stipulation of counsel, all three cases were transferred and consolidated in this division for expeditious disposition.

Florida Water urges two points in support of its position (1) that EQCB Order No. 76-15, denying it a qualified statement of approved water service, was not supported by competent, substantial evidence; and (2) that the bifurcated rate regulatory plan of Dade County (as set out in Sections 24-28, 24-29, 32-64 and 32-65 of the code) was unconstitutional and denied Florida Water substantive and procedural due process of law. Florida Water's position is not well founded on either point.

### Environmental Quality Control Order No. 76-15

The hearing before the EQCB was a full and fair evidentiary hearing in which Florida Water was accorded full protections of due process of law. The utility presented its case and testimony regarding its recurring water problems (high iron content) as well

as its corporate structure and financial condition. It was represented by able counsel and was not prohibited in any way from full presentation and participation in the hearing. Testimony was heard by the board from consumers of the utility, represented by the Consumer Advocate for Dade County, and the recommendations of staff were expressed and considered.

The court, upon review of the record before the EQCB, is impressed with the fairness and consideration shown to all parties before it in this matter. Moreover, the membership of the board (two professional engineers, one Ph.D. in biochemistry and two Ph.D's in biology) were obviously experts in their own right in the substantive matters before them. The court believes there was competent, substantial evidence before the board from which it could conclude that no "emergency" existed calling for the issuance of a qualified statement of approved water service pursuant to Section 24-29 of the Code of Dade County.

The court recognizes that the determination of whether or not an "emergency" exists rests, generally, within the sound discretion of the administrative or legislative body considering the matter, and that decision will not be lightly overturned by the courts. *Lifschitz v. City of Miami Beach*, 339 So.2d 232 (3d DCA Fla. 1976); *State of Florida v. City of Miami Beach*, 234 So.2d 103 (Fla. 1970); *Glackman v. City of Miami Beach*, 51 So.2d 294 (Fla. 1951); *State ex rel. Swift v. Dillon*, 75 Fla. 785, 79 So. 29 (1918); *Metropolis Publishing Co. v. City of Miami*, 100 Fla. 784, 129 So. 913 (1930); *State ex rel. Skillman v. City of Miami*, 101 Fla. 585, 134 So. 541 (1931). Moreover, the determination of whether or not an "emergency" exists is essentially a question of fact, best determined by the board most intimately acquainted with those facts. *City of Miami v. Gioia*, 215 So.2d 780 (3d DCA Fla. 1968).

The record in this cause indicates competent, substantial evidence to support the board's decision that the utility's rusty water problem was neither sudden, unforseen nor unexpected. Moreover, the evidence was also sufficient to allow the board to determine, within its sound discretion, that this problem did not constitute a pressing necessity or exigency, not necessarily wholly unexpected. In other words, the board had before it substantial and competent evidence in which to conclude that no "emergency" existed calling for issuance of the Section 24-29 statement, under any accepted definition of the term "emergency." *City of Miami v. Gioia*, supra.

This court will not and cannot disturb this action of the board once having determined that it was based on competent, sub-

stantial evidence. *Fitzpatrick v. City of Miami Beach*, 328 So.2d 578 (3d DCA Fla. 1976); *Fla. Dept. of Health & Rehab. Services v. Career Service Commission*, 289 So.2d 412 (4th DCA Fla. 1974); *Board of Trustees v. Sistrunk*, 310 So.2d 405 (3d DCA Fla. 1975).

## Constitutionality

Under the provisions of Article VIII, Section 11 of the Home Rule Amendment to the constitution of the state of Florida, Dade County was authorized to adopt a charter and enact ordinances relating to the affairs, property and government of Dade County, and to do everything necessary to carry on a central metropolitan government in Dade County. Pursuant to this authorization the voters of Dade County enacted the Home Rule Charter which provided the following powers to the board of county commissioners, Section 1.01(a), Home Rule Charter —

9. Provide and regulate or permit municipalities to provide and regulate waste and sewage collection and disposal and water supply and conservation programs.

\* \* \*

14. Regulate, control, take over, and grant franchises to, or itself operate gas, light, power, telephone, and other utilities, sanitary and sewage collection and disposal systems, water supply, treatment, and service systems . . .

\* \* \*

22. Adopt such ordinances and resolutions as may be required in the exercise of its powers, and prescribe fines and penalties for the violation of ordinances.

23. Perform any other acts consistent with law which are required by this Charter or which are in the common interest of the people of the county.

Under these constitutional and charter powers, the board of county commissioners enacted a rate regulatory scheme for private water and sewer utilities operating within Dade County through the enactment of Chapter 32 of the code. The Third District Court of Appeal has held that the enactment of such a rate regulatory plan for Dade County was not in conflict with the provisions of Chapter 367, Florida Statutes, and, therefore, the manner and mode that Dade County regulated the rates of private water and sewer utilities was not subject to the legislative direction of the state of Florida or the jurisdiction of the Public Service Commission as set out in that chapter. *Carol City Utilities, Inc. v. Dade County*, 183 So.2d 227 (3d DCA Fla. 1966). Subsequently, the

power of the Dade County Commission to regulate public utilities has also been approved relating to municipalities performing the functions of a water and sewer utility. *State of Florida ex rel. City of Miami Beach v. Dade County Water and Sewer Board,* ...... So.2d ...... (3d DCA Fla., Case Nos. 76-269, 76-1370, 76-1276, opinion filed June 14, 1977); *City of North Miami Beach v. Metropolitan Dade County,* 317 So.2d 110 (3d DCA Fla. 1975), cert. denied, 334 So.2d 604 (Fla. 1976).

According to this authority, the board of county commissioners amended its utility rate regulatory plan in May of 1975 to create a bifurcated hearing system whereby a utility seeking rate relief would need to show either an emergency as to water service (Section 24-29) or that it was meeting minimum quality of water and sewer service standards before being considered for rate relief (Section 24-28). The quality of service determination was delegated to the EQCB, a technically expert panel in matters of water and sewer service quality. Rate regulation was left, after quality of service determination, to the WSB, made up of C.P.A.'s, accountants, attorneys and utility rate experts. Prior to May of 1975, all quality of service and rate making considerations rested in the WSB, without the technical expertise necessary to determine quality of service considerations.

The court accords a strong presumption of constitutional validity to sections 24-28, 24-29, 32-64 and 32-65 of the County Code and the petitioner must bear an extraordinary burden in clearly demonstrating that these ordinances are unconstitutional. *Sarasota County v. Barg,* 302 So.2d 737 (Fla. 1974); *Lasky v. State Farm Ins. Co.,* 296 So.2d 9 (Fla. 1974); *City of Miami v. Kayfetz,* 92 So.2d 798 (Fla. 1957); *United Telephone Co. of Florida v. Mayo,* 215 So.2d 609 (Fla. 1968), appeal dismissed, 394 U.S. 995 (1969). Petitioner has failed to meet this heavy burden herein.

There is no doubt, and petitioner does not dispute, that quality of service may, at present, be considered as a factor in the utility rate making procedure of regulatory bodies. Moreover, inefficient or inadequate quality of service may result in denial, deferral or withheld rate increases, even if otherwise justified, without depriving a utility of its constitutional protections of "property" and "due process of law." *United Telephone Co. of Florida v. Mayo,* supra; *Askew v. Bevis,* 283 So.2d 337 (Fla. 1973); *North Florida Water Co. v. Bevis,* 302 So.2d 129 (Fla. 1974). Petitioner contends, however, that failure to allow consideration of any other factor at the initial step in rate proceedings is a denial of due process of law.

Petitioner's argument is not persuasive. It ignores the fact that the element or factor of quality of service and its impact on rate

proceedings is solely a creature of the legislative discretion. Thus, for example, quality of service of a utility was not permitted to be considered by the Florida Public Service Commission (or its predecessor Florida Railroad and Public Utilities Commission) prior to 1967. *Florida Telephone Corp. v. Carter,* 70 So.2d 508 (Fla. 1954). It was only after the legislature included quality of service statutorily as a factor in rate proceedings that its consideration and weight was recognized. Florida Statutes, Section 366.041; *United Telephone Co. of Florida v. Mayo, supra.*

Dade County's legislature has likewise included quality of service as a factor in the rate making process but has also accorded it greater weight than any other factor. Thus, utilities which have not or will not provide its consumers with the barest minimum quality of water and sewer service are not permitted to financially gain from that service. The wisdom of this legislative decision is not within this court's power to review and reverse, but is admirable nonetheless.

A factual situation similar to the case *sub judice* arose in the District of Columbia wherein the utility furnishing transportation services permitted its quality of service to deteriorate due to corporate mismanagement over an extended period of time, and then applied for a rate increase to bolster its sagging service quality. *In D.C. Transit Systems, Inc. v. Washington Metropolitan Area Transit Commission,* 466 F.2d 394 (D.C. App. 1972), cert denied, 409 U.S. 1086, 93 S.Ct. 688, 34 L.Ed.2d 673 (1972), the rate regulatory commission halted any further "consideration" of the fare increase after only a "preliminary examination" of the company revealing inefficient and inadequate management and services practices. This action was upheld by the courts as reasonable, constitutional and a proper exercise of the commission's powers. The board of county commissioners of Dade County has mandated the same course of action for all water and sewer utilities in Dade County through the preliminary examination of quality of service proceedings set out within Sections 24-28, 24-29, 32-64 and 32-65 of the Dade County Code. The court finds that these ordinances, while innovative, still have a reasonable relation to a proper legislative purpose and are neither arbitrary nor discriminatory. As a result, petitioner's constitutional challenge must fail.

Accordingly, it is ordered and adjudged —

(1) That the petitions for writ of certiorari sought in Case Nos. 76-11311, 76-18500 and 76-18501 be and the same are hereby denied, and those matters are, therefore, dismissed.

(2) That each party shall bear its own costs of this action.