410 So.2d 492 (1982)
GULF POWER COMPANY, Appellant,
v.
Joseph P. CRESSE, Chairman, Gerald L. Gunter, John R. Marks, III, Katie Nichols, and Susan W. Leisner, As and Constituting the Florida Public Service Commission, and the Citizens of the State of Florida, Appellees.
The CITIZENS OF The STATE OF FLORIDA, Appellant,
v.
Joseph P. CRESSE, Chairman, Gerald L. Gunter, John R. Marks, III, Katie Nichols, and Susan W. Leisner, As and Constituting the Florida Public Service Commission, and Gulf Power Company, Appellees.
No. 60437.
Supreme Court of Florida.
January 28, 1982.
Rehearing Denied March 22, 1982.
C. Roger Vinson of Beggs & Lane, Pensacola, for Gulf Power Co.
Jack Shreve, Public Counsel and Benjamin H. Dickens, Jr., Associate Public Counsel, Tallahassee, for the Citizens of the State of Florida.
William S. Bilenky, Gen. Counsel and Joe McGlothlin, Chief Rate Counsel, Tallahassee, Florida Public Service Commission, for appellees.
ALDERMAN, Justice.
This cause is before us on consolidated direct appeals brought by Gulf Power Company and Citizens of the State of Florida to review Order No. 9852 of the Public Service Commission. Finding no merit to the arguments presented by Gulf Power and Citizens, we affirm.
*493 Gulf Power filed its petition and proposed rate schedules on March 3, 1980, pursuant to section 366.06(4), Florida Statutes (1979), the Florida "File and Suspend" Law. Within the statutory thirty-day review period, the Commission suspended the proposed rates and authorized an interim increase of $6,257,000 annually, subject to refund pending final disposition of the case.
On November 3, 1980, exactly eight months after Gulf filed its petition and proposed rate schedules, the Commission authorized Gulf to increase its rates and charges by $40,623,065 annually on a permanent basis and directed Gulf to file revised rate schedules to become effective and applicable to bills rendered for meter readings taken on and after November 10, 1980. Order No. 9628, dated November 10, 1980. The Commission also allowed Gulf to include in its rate base unamortized expenses resulting from the cancellation of its plan to construct a new utility plant at Caryville, and it added ten basis points to Gulf's return on equity in recognition of its energy conservation efforts. Gulf filed its revised rate schedules and began to collect the additional revenue.
By Petition for Reconsideration dated November 25, 1980, Citizens requested the Commission to reconsider the Caryville cancellation charges and the addition of ten basis points to Gulf's return on equity. Citizens did not request the Commission to reconsider the effective date of the new rates. The Commission, however, on its own initiative reconsidered the effective date of the rates authorized by Order No. 9628.
An agenda conference was held on February 9, 1981, at which time the Commission discussed and approved a change in the effective date of the approved rate increase. On March 5, 1981, the Commission issued its Order No. 9852. It held that the approved rate increase was to apply to bills based on meter readings taken on or after December 3, 1980, thirty days after the effective date of the new rates and that Gulf must refund the approximately $2.2 million resulting from the application of the new rates to bills based on meter readings from November 10 through December 3. It permitted Gulf to include the unamortized Caryville cancellation charges in its rate base but required that within a year Gulf provide evidence of justification for cancelling this plant. The Commission concluded that it had properly exercised its authority when it added ten basis points to Gulf's return on equity.
The issues presented by this appeal are: Was the Commission correct in ordering Gulf to begin billing under the new rates on meter readings taken thirty days after the effective date of the new rates, and in this case, thirty days after the expiration of the file and suspend period? Is the effective date of Commission action when the official vote is taken or when the written order is issued? Did the inclusion of the unamortized Caryville cancellation charges as a base rate component violate the essential requirements of law? Was the addition of the ten basis points to Gulf's return on equity for energy conservation efforts an abuse of Commission discretion?
In response to the first issue, the Commission contends that it was following the law regarding prospective ratemaking[1] when it ordered Gulf to bill at the new rates on meter readings taken on or after December 3, 1980. It also contends that to permit Gulf to bill at the new rates on the day following the suspension period, which in this case was the effective date of the Commission's approval of the rate increase, would result in the billing of energy consumed before the end of the suspension period and before the effective date of Commission action. We agree and affirm the Commission's action in requiring that the new rates be applied to bills based on *494 meter readings taken on or after December 3, 1980.[2]
As to the effective date of its action approving Gulf's rate increase, the Commission contends that it was November 3, 1980, the date on which the issues were decided and the official vote was taken. We agree. See § 366.072, Fla. Stat. (Supp. 1980).
With regard to the remaining two issues, the Commission argues that it neither violated the essential requirements of law nor abused its discretion by including the unamortized Caryville cancellation charges as a base rate component or by adding ten basis points to Gulf's return on equity in recognition of its energy conservation efforts. We agree.
Accordingly, we affirm.
It is so ordered.
ADKINS, BOYD, OVERTON and McDONALD, JJ., concur.
SUNDBERG, C.J., concurs in result only.
NOTES
[1] § 366.06(2), Fla. Stat. (Supp. 1980); Gulf Power Co. v. Bevis, 289 So.2d 401 (Fla. 1974); City of Miami v. Florida Public Service Commission, 208 So.2d 249 (Fla. 1968).
[2] Our holding will not preclude utility companies in the future from billing at the new rates for all the energy consumed after the effective date of rate changes when technological advancements make possible the reading of all electric meters on the same day so as to ensure that consumption only from that day forward will be billed at the new rates.