597 So.2d 270 (1992)
GULF POWER COMPANY, Appellant,
v.
Michael McK. WILSON, etc., et al., Appellees.
No. 77153.
Supreme Court of Florida.
April 9, 1992.
*271 Alan C. Sundberg, Tallahassee, and Sylvia H. Walbolt and E. Kelly Bittick, Jr., of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Tampa, and G. Edison Holland, Jr., Jeffrey A. Stone and Teresa E. Liles of Beggs & Lane, Pensacola, for appellant.
Robert D. Vandiver, Gen. Counsel, and David E. Smith, Director of Appeals, Florida Public Service Com'n, Tallahassee, and Jack Shreve, Public Counsel, and John Roger Howe, Asst. Public Counsel, Tallahassee, on behalf of the Citizens of the State of Florida, for appellees.
OVERTON, Justice.
Gulf Power Company appeals the Florida Public Service Commission's Order No. 23573, which authorized a rate increase for Gulf Power. In authorizing the rate increase, the Public Service Commission (Commission) found that Gulf Power's fair rate of return on equity was between 11.75% and 13.50%. The Commission determined that ordinarily it would have approved Gulf Power's rate of return at 12.55%, but found that it should reduce the return to 12.05% because, as it stated in detailed findings, Gulf Power was guilty of mismanagement. In this appeal, Gulf Power challenges the reduction, asserting that the Commission has no authority to make the reduction and, further, that this reduction violated the basic principles of ratemaking. We have jurisdiction[1] and, for the reasons expressed, affirm the Commission's order.
This matter commenced in December of 1990 when Gulf Power filed rate schedules with the Commission which, if fully implemented, would have allowed Gulf Power an additional $26.3 million in revenue based upon a requested return on equity of 13%. An interim rate increase, which provided an additional $5,751,000 was also awarded pending formal hearings on the petition.
In its prehearing statement, the Commission noted that it would consider whether the authorized return on equity should be reduced if it was determined that Gulf Power had been mismanaged during the 1980s due to various instances of misconduct by one of Gulf Power's management officials.
*272 After hearing expert testimony, the Commission determined that Gulf Power's reasonable rate of return on equity lay between 11.75% and 13.50%. The Commission then set Gulf Power's return on equity at 12.55%, but determined that its findings of mismanagement justified a reduction in Gulf Power's return on equity of fifty basis points. This placed Gulf Power's rate of return at 12.05%, thirty points above the minimum allowable rate of return.
In its order, the Commission summarized its findings of mismanagement as follows:
The record is clear: Gulf Power Company admitted that corrupt practices took place at Gulf Power Company from the early 1980s through 1988, including but not limited to theft of company property, use of company employees on company time to perform services for management personnel, utility executives accepting appliances without payment, and political contributions made by third parties and charged back to Gulf Power Company. The majority of the unethical/illegal activities involved Jacob Horton, the Senior Vice President of Gulf Power Company. Mr. Horton was killed in a plane crash on April 10, 1989.
The Commission concluded:
This record reflects a disregard for the ratepayers and public service, however. Accordingly, we will reduce Gulf Power Company's ROE by fifty (50) basis points for a two year period. This results in a final ROE of 12.05%.
This final ROE is well within the parameters established as fair and reasonable by expert testimony of record. This reduction in the authorized ROE for a two year period is meant as a message to management that the kind of conduct discussed above, which was endemic for at least eight years at this company, will not be tolerated for public utilities which operate in Florida. We have limited the reduction to a two year period to reflect our belief that Gulf Power has turned the corner on dealing with the extensive and long-standing illegal/unethical behavior within the company.
Gulf Power asserts that this is a penalty not authorized by Florida Statutes and is the type of penalty prohibited by article I, section 18, of the Florida Constitution. Article I, section 18, provides that "[n]o administrative agency shall impose a sentence of imprisonment, nor shall it impose any other penalty except as provided by law." Gulf Power contends that, because chapter 366, Florida Statutes, constitutes the general grant of authority to the Commission to regulate utilities and contains no express authority to impose a penalty for the type of corporate conduct involved in this case, the Commission has exceeded its authority. Section 366.095, Florida Statutes (1989), which authorizes the Commission to impose penalties, provides:
The commission shall have the power to impose upon any entity subject to its jurisdiction under this chapter that is found to have refused to comply with or to have willfully violated any lawful rule or order of the commission or any provision of this chapter a penalty for each offense of not more than $5,000, which penalty shall be fixed, imposed, and collected by the commission.
(Emphasis added.) Gulf Power relies largely on our decisions in Florida Tel. Corp. v. Carter, 70 So.2d 508 (Fla. 1954), and Deltona Corp. v. Mayo, 342 So.2d 510 (Fla. 1977). In Carter, the Commission reduced the utility's rate of return below the reasonable rate of return range on the grounds that the services provided were inadequate and insufficient. This Court quashed the order of that Commission, holding that its statute did not authorize it to impose a penalty because of poor or inadequate service that denied the utility a rate increase "which it found to be just." Carter, 70 So.2d at 510. In Mayo, the Commission denied Deltona Corporation a rate increase for sewer and water services based on Deltona's allegedly fraudulent land sales practices. This Court held that "[i]f Deltona has engaged in an unfair business practice or committed fraud, however, it may be a concern of other state agencies or the basis for private law suits ... but it is not a matter of statutory concern to the *273 Public Service Commission." Mayo, 342 So.2d at 512.
Gulf Power asserts that these cases establish that the only "penalties" that the Commission may impose are those expressly authorized by statute, i.e., section 366.095, Florida Statutes. Gulf Power argues that, because it has not violated or refused to comply with any rule or order of the Commission, the fifty basis point reduction violates article I, section 18, of the Florida Constitution. We disagree.
The reduction in Carter resulted in a rate of return well below the range found by the Commission as being fair and reasonable. The effect of that Commission's action was to completely deny the utility a rate increase within the range it found to be reasonable. Similarly, the Commission in Mayo completely denied Deltona a reasonable rate of return. In this case, however, the Commission did not deny Gulf Power a rate increase or impose a penalty that would deny Gulf Power a reasonable rate of return. On the contrary, the return on equity set by the Commission, 12.05%, is well within the range found to be fair and reasonable. The reduction was neither a penalty, as in Deltona and Carter, nor confiscatory.
It is well established that all a regulated public utility is entitled to is "an opportunity to earn a fair or reasonable rate of return on its invested capital." United Tel. Co. v. Mann, 403 So.2d 962, 966 (Fla. 1981). See also Gulf Power Co. v. Bevis, 289 So.2d 401 (Fla. 1974). What constitutes a fair rate of return for a utility depends upon the facts and circumstances of each utility, and this Court has expressly recognized that the Commission must be allowed broad discretion in setting a utility's appropriate rate of return. United Tel. Co. v. Mayo, 345 So.2d 648 (Fla. 1977). In Mann, we explained the purpose of setting a rate of return range:
By establishing a rate of return range in addition to establishing a specific rate of return, the commission is acknowledging the economic reality that a company's rate of return will fluctuate in the course of a normal business cycle. Earnings in excess of the authorized rate of return could possibly be offset by lower earnings in later years. Thus the purpose of having a range is to give the commission some flexibility in deciding whether a public utility's rates should be changed. The existence of the range does not limit the commission's authority to adjust rates even though a public utility's rate of return may fall within the authorized range. For example, if a public utility is consistently earning a rate of return at or near the ceiling of its authorized rate of return range, the commission may find that its rates are unjust and unreasonable even though the presumption lies with the utility that the rates are reasonable and just. The commission's discretion in this matter is not annulled by the establishing of a rate of return range.

403 So.2d at 967-68 (emphasis added). Furthermore, this Court explained that, after setting the rate of return range, "the commission can make further adjustments to account for such things as accretion, attrition, inflation and management efficiency." Id. at 966 (emphasis added). Accordingly, we find that the Commission's adjustment of Gulf Power's rate of return within the fair rate of return range falls within those powers expressly granted by statute or by necessary implication. City of Cape Coral v. GAC Utilities, 281 So.2d 493 (Fla. 1973). This Court has previously recognized that this authority includes the discretion to reward, within the reasonable rate of return range, for management efficiency. In fact, Gulf Power has in the past received a ten basis point reward for efficient management through its energy conservation efforts. Gulf Power Co. v. Cresse, 410 So.2d 492 (Fla. 1982). We find that, inherent in the authority to adjust for management efficiency is the authority to reduce the rate of return for mismanagement, as long as the resulting rate of return falls within the reasonable range set by the Commission. This concept of adjusting a utility's rate of return on equity based on performance of its management is *274 by no means new to Florida or other jurisdictions.[2]
In a competitive market environment, the market would provide the necessary incentives for management efficiency and corresponding disincentives for mismanagement. However, for a utility that operates as a monopoly, this discretionary authority to reward or reduce a utility's rate of return within a reasonable rate of return range is the only incentive available. A commentator on public utility regulation has explained:
While exceptional management is rarely explicitly rewarded, and mediocrity infrequently penalized, it suggests more systematic and deliberate efforts on the part of regulating agencies to distinguish, somewhat as competition is presumed to do, in favor of companies under superior management and against companies with substandard management. The distinction might take the form of an explicit and publicly recognized differential in the allowed rate of return. There is ground for the conviction that the opportunity of a well-managed utility to earn a return liberally adequate to attract capital is in the public interest as encouraging rapid technological progress and long-run policies of operation. Objection might be raised to a substandard rate of return on the grounds that it would make bad matters worse, but one might hope that the restriction of a company, by virtue of a commission finding of inferior management, to a minimum rate of return measured, say, by a bare bones estimate of the cost of capital, could become so intolerable to the stockholders that they would enforce a change of management.
James C. Bonbright et al., Principles of Public Utility Rates 366-67 (2d ed. 1988).
Gulf Power's final argument is that the Commission's reduction in its rate of return violates the fundamental principles of rate-making. Gulf Power asserts that the Commission was impermissibly setting future rates based on past matters that are not part of the test year relied upon by the Commission in projecting Gulf Power's future expenses and operating costs. Gulf Power argues that the Commission may only reward or reduce the rate of return for management efficiency to the extent it impacts future service, facilities, or rates. That philosophy would effectively exonerate the utility for all past management inefficiency, eliminate the underlying purpose for consideration of this factor in setting a utility's specific rate of return within the reasonable rate of return range, and require this Court to recede from Mann. Gulf Power has benefitted from this management efficiency factor in the past, and now must accept a reduction for its mismanagement.
The order of the Public Service Commission is hereby affirmed.
It is so ordered.
SHAW, C.J., and McDONALD, BARKETT, GRIMES, KOGAN and HARDING, JJ., concur.
NOTES
[1] Art. V, § 3(b)(2), Fla. Const.
[2] LaSalle Tel. Co. v. Louisiana Pub. Serv. Comm'n, 245 La. 99, 157 So.2d 455 (1963) (court increased rate of return as reward for good management); State ex rel. Utilities Comm'n v. General Tel. Co., 285 N.C. 671, 208 S.E.2d 681 (1974) (court affirmed commission's refusal to grant otherwise justifiable increase in return where indifference of top management and personnel caused deterioration of service); see also In re Pacific Tel. & Tel. Co., 16 Pub.Util.Rep.4th (PUR) 384 (Cal.P.U.C. 1976) (commission reduced telephone company's rate of return for unreasonable budget management); In re West Fla. Natural Gas Co., 86 F.P.S.C. 9:74 (1986) (commission reduced rate of return fifty basis points due to management's failure to inform commission of material changes affecting validity of rate applications); In re Florida Power Corp., 73 Pub.Util.Rep.3d (PUR) 295 (Fla. P.S.C. 1968) (electric utility held to lower range of return for inability to achieve satisfactory degree of efficiency in controlling level of rates); In re General Tel. Co., 44 Pub.Util.Rep.3rd (PUR) 247 (Fla. P.S.C. 1962) (commission found utility operated efficiently and deserved recognition through increase in return); In re South County Gas Co., 53 Pub.Util.Rep.4th (PUR) 525 (R.I.P.U.C. 1983) (commission imposed penalty on electric utility's rate of return to indicate commission's outrage over utility's neglect of public service obligation).